MORGAN, LEWIS & BOCKIUS LLP
Carrie A. Gonell (State Bar No. 257163)
Nancy Nguyen (State Bar No. 301677)
Hailey A. Phelan (State Bar No. 353990)
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626-7653
Tel: +1.714.830.0600
Fax: +1.714.830.0700
carrie.gonell@morganlewis.com
nancy.nguyen@morganlewis.com
hailey.phelan@morganlewis.com

Attorneys for Defendant
Caliber Holdings LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ORLIN MORALES, individually and on behalf of others similarly, and as an aggrieved employee and Private Attorney General,<br><br>Plaintiff,<br><br>v.<br><br>CALIBER HOLDINGS LLC, a California limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:26-cv-08501<br><br>**DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>28 U.S.C. §§ 1332(a), 1441 and 1446 |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446, Defendant Caliber Holdings LLC ("Caliber" or "Defendant"), removes the above-entitled action from the Los Angeles County Superior Court to the United States District Court for the Central District of California. This Court has original subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. sections 1332(d) and 1453, because minimum diversity exists and the amount in controversy exceeds $5 million.

Removal is based on the following grounds:

## I. PLEADINGS, PROCESS, AND ORDERS

1. On October 10, 2025, Plaintiff Orlin Morales ("Plaintiff") filed an unverified Complaint in the Los Angeles County Superior Court, entitled *Orlin Morales, individually and on behalf of others similarly situated, and as an aggrieved employee and Private Attorney General v. Caliber Holdings LLC*, Case No. 25STCV29833 ("Complaint").

2. On December 19, 2025, Morales filed a First Amended Complaint ("FAC"), alleging causes of action for (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) meal period violations; (4) rest period violations; (5) failure to pay timely wages during employment and upon termination; (6) wage statement violations; (7) failure to reimburse necessary business expenses; (8) failure to maintain accurate records; (9) failure to pay vacation pay; (10) unfair competition; and (12) civil penalties under the Private Attorneys General Act. The FAC names "Caliber Holdings, LLC" as Defendant.

3. On July 1, 2026, Plaintiff served the Complaint and the FAC on Caliber. A true and correct copy of the initial Complaint is attached as **Exhibit A**. A true and correct copy of the FAC is attached as **Exhibit B**.

4. True and correct copies of the Summons and all documents served with the FAC are attached as **Exhibit C**.

5. Plaintiff seeks to represent the following class: "All current and former non-exempt employees of any of the Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the certified class action is provided to the class." *See* Exh. B, FAC ¶ 13.

6. All other papers filed in this action in the Los Angeles County Superior Court, including documents filed by Plaintiff and the Los Angeles County Superior Court clerk, are attached as **Exhibit D**.

7. **Exhibits A through D** constitute all the pleadings, process, and orders served upon or by Defendant, or filed to Caliber's knowledge to date, in the Superior Court action.

## II. THE REMOVAL IS TIMELY.

8. This Notice of Removal is timely filed, pursuant to 28 U.S.C. 1446(b), because it is filed and served within thirty days of Caliber's receipt of Plaintiff's Complaint and FAC. *See* 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."). Plaintiff served his Complaint and FAC on Caliber on July 1, 2026.

9. No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA.

10. This lawsuit is a civil action within the meaning of the Acts of Congress relating to removal of class actions. *See* 28 U.S.C. § 1453.

11. This action is brought by Plaintiff as a putative class action on behalf

of a proposed class of more than 100 individuals. As such, this matter is a "purported class action" as that term is defined pursuant to CAFA.

12. The FAC could have been filed in this Court under 28 U.S.C. § 1332(d) because this matter is brought as a class action under California Code of Civil Procedure § 382, diversity of citizenship exists between one or more members of the putative class and Defendant, and, accepting Plaintiff's allegations only for the purposes of this removal, the amount in controversy exceeds, in the aggregate, $5,000,000, exclusive of interests and costs. Removal therefore is proper pursuant to 28 U.S.C. §§ 1446 and 1453.[1]

**A. <u>Diversity Of Citizenship Exists.</u>**

13. To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, that is, that one putative class member is a citizen of a state different from that of one defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090–91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

14. Here, all requirements are met because Plaintiff is a citizen of California and Caliber is a citizen of Delaware and Texas, but is not a citizen of California. Thus, minimal diversity exists and removal is proper.

**1. Plaintiff is a Citizen of California.**

15. Plaintiff is, and was at the time he filed the FAC, a citizen of the State of California. "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (*citing*

---

[1] Caliber does not concede and reserves the right to contest, at the appropriate time, Plaintiff's allegations that this action can properly proceed as a class action. Caliber further does not concede the merits of any of Plaintiff's allegations or that they constitute a cause of action under applicable California law.

*Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (*citing Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Domicile is determined by "an individual's 1) residence in a state, and 2) his intent to remain indefinitely." *Boon*, 229 F. Supp. 2d at 1019.

16. The FAC alleges that Plaintiff "is an individual residing in the County of Los Angeles, State of California." FAC ¶ 7. The FAC does not allege that Plaintiff is a citizen of any state other than California. Plaintiff, therefore, is a citizen of California for purposes of removal.

**2. Caliber Is Not A Citizen Of California.**

17. Caliber is, and was at the time of the institution of this civil action, a limited liability company whose member is a citizen of Delaware and Texas.

18. For diversity purposes, under 28 U.S.C. section 1332(a), a limited liability company is a citizen of every state of which its owners/members are citizens. *Johnson v. Colombia Properties Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006). Caliber is a wholly owned subsidiary of CH Hold LLC. The sole member of Caliber is CH Hold LLC. CH Hold LLC is a limited liability company and a wholly owned subsidiary of Wand Caliber Holdings LLC. The sole member of CH Hold LLC is Wand Caliber Holdings LLC. Wand Caliber Holdings LLC is a limited liability company and a wholly owned subsidiary of Wand Newco 3, Inc. The sole member of Wand Caliber Holdings LLC is Wand Newco 3, Inc. Wand Newco 3, Inc. is, and was at the time of the institution of this civil action, a corporation formed under the laws of the State of Delaware with its headquarters and principal place of business in the State of Texas.

19. For diversity purposes, "a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'" *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir.

2009) (citing 28 U.S.C. § 1332(c)(1)). Wand Newco 3, Inc.'s principal place of business is in Texas because, under *Friend*, 559 U.S. at 93, its "nerve center" is located in the State of Texas. Wand Newco 3, Inc.'s corporate headquarters are located at 2941 Lake Vista Drive, Lewisville, Texas 75067, and its corporate books and records are located there. Furthermore, Wand Newco 3, Inc.'s executive officers are based in the corporate offices in Texas and this is where the day-to-day control of the business is exercised.

20. Therefore, Wand Newco 3, Inc. is a citizen of Delaware based on its state of incorporation and a citizen of Texas under the "nerve center" test. Because Wand Newco 3, Inc. is a citizen of Delaware and Texas, Caliber shares the same states of citizenship. Therefore, under *Johnson*, Caliber is also a citizen of both Delaware and Texas. *See Johnson*, 437 F.3d at 899.

21. Although Plaintiff has listed fifty fictitiously-named "Doe" defendants, the citizenship of these "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (for removal purposes, the citizenship of defendants sued under fictitious names shall be disregarded).

22. Therefore, because Plaintiff and Caliber are not residents of the same state, diversity of citizenship exists. *See* 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any defendant").

**B. <u>The Proposed Class Membership is Sufficiently Large.</u>**

23. CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. §1332(d)(5)) is satisfied here because the putative class has more than 100 members.

24. The alleged Class Plaintiff seeks to represent is "[a]ll current and former non-exempt employees of any of the Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's

complaint up until the time that notice of the certified class action is provided to the class." FAC ¶ 13.

25. According to business records, Caliber is informed and believes that in the four years preceding the filing of Plaintiff's Complaint, Caliber employed more than 6,410 non-exempt employees in California who are working or have worked for Caliber in California since October 10, 2021.[2] Caliber is further informed and believes from available data that more than 1,450 full-time putative class members separated from Caliber between February 1, 2024 and at least thirty (30) days before removal. Thus, the putative class contains more than 100 members.

**C. The Amount In Controversy Exceeds $5,000,000.**[3]

26. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). As the United States Supreme Court has advised, "no antiremoval presumption attends cases invoking CAFA" because Congress intended to "facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014); *see also Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (reversing district court's remand to state court due to an

---

[2] Based on Plaintiff's claims and how he defines the putative class, the time period at issue begins four-years preceding the filing of the Complaint, or October 10, 2021, through the present. Removal is appropriate here based on employment records covering part of the period through February 13, 2025. As a result, Caliber's calculation of the amount in controversy understates the actual amount in controversy, which is likely to be higher based on the entire time period placed at issue by the Complaint.

[3] This Notice of Removal addresses the nature and amount of damages that the FAC places in controversy. Caliber refers to specific damages estimates and cites to comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. Caliber maintains that each of Plaintiff's claims lacks merit and that Caliber is not liable to Plaintiff or any putative class member in any amount whatsoever. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the FAC or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

"inappropriate demand of certitude from [the defendant] over its assumptions used in calculating the amount in controversy" for purposes of CAFA removal). In *Jauregui*, the Ninth Circuit recently instructed that a "defendant's amount in controversy assumptions in support of removal will always be just that: *assumptions*" and "the parties need not predict the trier of fact's eventual award with one hundred percent accuracy." *Jauregui*, 28 F.4th at 993 (emphasis in original). In instances where a district court disagrees with the underlying assumptions made regarding the valuation of claims, the court should consider the claim "under the better assumption" so as not to "subvert the purpose of CAFA" by remanding cases when the amount in controversy clearly meets the threshold. *Id.* at 996.

27. Because Plaintiff does not expressly plead a specific amount of class damages, Caliber needs to show it is more likely than not that the amount in controversy exceeds $5 million. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). Caliber's burden to establish the amount in controversy is by a preponderance of the evidence. *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547 (2014); *see also Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart* for the proposition that there is no anti-removal presumption against CAFA cases). A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554.

28. "[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages." *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, *2 (C.D. Cal. April 28, 2015) (citation omitted); *see also LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in

controversy with the amount of damages ultimately recoverable"); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy"). Indeed, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Perez v. Rose Hills Co.*, 131 F.4th 804, 807 (9th Cir. 2025).

29. The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe. *LaCross*, 775 F.3d at 1202 (citation omitted) (explaining that courts "first look to the complaint in determining the amount in controversy"); *see also Perez*, 131 F.4th at 808 (explaining the plaintiff could have used language in the complaint, but did not, to constrain the range of reasonable assumptions that could be drawn by the removing defendant); *Jauregui v. Roadrunner Transp. Servs., Inc.,* 28 F.4th 989, 993 (9th Cir. 2022) ("At that stage of the litigation, the defendant is being asked to use the plaintiff's complaint—much of which it presumably disagrees with—to estimate an amount in controversy. This is also at a stage of the litigation before any of the disputes over key facts have been resolved.").

30. Under *Dart*, a removing defendant is not required to submit evidence in support of its removal allegations. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[A] removing defendant's notice of removal *need not* contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (internal quotations omitted) (emphasis added). The allegations in the removing defendant's notice of removal may rely on "a chain of reasoning that includes assumptions" and "an assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019); *see also Perez*, 131 F.4th at 807 (explaining that in *Arias*, the

Ninth Circuit explained that "assumptions made part of the defendant's chain of reasoning need not be proven"); *McCollum v. TGI Friday's, Inc.*, 2022 WL 2663870, at *2 (C.D. Cal. July 11, 2022) (citing *Arias*, 936 F.3d at 925); *Marano v. Liberty Mut. Grp., Inc.*, 2021 WL 129930, at *2 (C.D. Cal. Jan. 14, 2021) (same). Where the plaintiff "could have, but did not, make more specific allegations to narrow the scale or scope of th[e] controversy," courts "have assumed 100% violation rates" based on the complaint's "sweeping allegations." *Marano*, 2021 WL 129930, at *3. As detailed below, Caliber plausibly alleges that the amount in controversy exceeds $5 million based on Plaintiff's allegations, and that the Court has jurisdiction pursuant to CAFA. Here, the aggregated claims of the putative class members put into controversy over $5 million in potential damages. 28 U.S.C. § 1332(d)(2).

31. As explained above, Plaintiff seeks to represent a putative Class of more than 6,410 members. Based on the allegations in the FAC and as set forth below, Plaintiff has put more than $5 million in controversy, and thus CAFA removal is appropriate.[4]

**1. Plaintiff's First Cause of Action for Overtime Violations Places at Least $4,620,000 in Controversy.**

32. Plaintiff alleges in his FAC that "[t]hroughout the time period involved in this case" Caliber "regularly failed to pay all overtime compensation owed to Plaintiff, the Class, and the Aggrieved Employees," because Caliber "regularly required Plaintiff, the Class, and the Aggrieved Employees to perform work off the

---

[4] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Caliber's references to specific damage amounts and their citation to comparable cases are provided solely for the purpose of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Caliber maintains that each of Plaintiff's claims is without merit and that Caliber is not liable to Plaintiff or any putative class member. In addition, Caliber denies that liability or damages can be established on a class wide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise.

clock," and "prohibited overtime" yet "still regularly required that Plaintiff and the Class complete all of their assigned duties." FAC ¶¶ 29, 32. The FAC further alleges that Caliber "implemented policies that prohibited Plaintiff, the Class, and the Aggrieved Employees from accurately recording the actual time worked" resulting in a failure to pay wages. *Id.* at ¶ 30.

33. The FAC also alleges that "[d]uring the relevant time period, Plaintiff and the other Class Members regularly worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week" and that Caliber "intentionally and willfully failed to pay overtime wages owed to Plaintiff and the other Class Members" (*id.* at ¶¶ 49-50) including by failing to pay "for all overtime hours worked based on regular rates of pay correctly calculated to include all applicable remuneration." *Id.* at ¶ 33.

34. As a result, Plaintiff alleges that he "and the other Class Members are entitled to recover unpaid overtime compensation, as well as interest, costs, and attorneys' fees." *Id.* at ¶ 52.

35. Based on Plaintiff's allegations, it is plausible and reasonable to assume that Plaintiff seeks to recover at least one hour of overtime wages per week for all putative class members. *Kastler v. Oh My Green, Inc.,* No. 19-cv-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (assuming one hour of unpaid minimum wages and unpaid overtime per week per class member "is a conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations" and simply alleged a "pattern and practice" of failing to pay overtime and minimum wages). Caliber's records reflect that at least 6,410 non-exempt employees have been employed between May 1, 2024 and February 2025, for at least 220,000 weeks worked, which represents just a subset of the four-year putative class period. Assuming conservatively that each class member worked one (1) hour of unpaid overtime per week, and using the minimum hourly rate for 2021 of $14.00,

**Plaintiff's overtime wage claim places in controversy at least $4,620,000** ($14.00 per hour x 1 hour per week x 1.5 overtime premium x 220,000 weeks).

**2. Plaintiff's Fifth Cause of Action Seeking Waiting Time Penalties Places at Least $5,220,000 in Controversy.**

36. Plaintiff alleges that Caliber willfully failed to pay the putative class all allegedly earned and unpaid wages at the time of discharge or within 72 hours of leaving Caliber's employ. *See* FAC ¶¶ 80-81. Labor Code Section 203 provides that an employer who willfully fails to timely pay wages to an employee who is discharged or quits, must pay, as a penalty, the "the wages of the employee . . . from the due date thereof . . . until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Labor Code § 203(a). Plaintiff alleges that "Plaintiff and other Class Members who are no longer employed by Defendants are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." FAC ¶ 83. Plaintiff alleges that *all* putative class members whose employment ended at least 30 days ago are entitled to the full 30 days of waiting time penalties. *See* FAC ¶ 35 ("Plaintiff, the Class, and the Aggrieved Employees did not receive payment of all final wages owed to them upon discharge or resignation, including overtime compensation and minimum wages within any time permissible under California Labor Code section 202.")

37. According to Caliber's records, the employment of at least 1,450 full-time putative class members terminated between February 1, 2024 and more than 30 days ago. This represents just a subset of the putative class members for whom Plaintiff seeks waiting time penalties. Based on Plaintiff's allegations of failure to pay former hourly employees their full wages at the time of discharge, Caliber may reasonably assume "that each terminated putative class member was entitled to 30 days of continuation wages at 8 hours of standard pay per day." *Oda v. Gucci Am.*,

*Inc.*, 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015); *see also Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 4579099 (N.D. Cal. Sept. 2, 2016) (finding that "allegations of willful failure to timely pay final wages (based on alleged overtime and meal and rest break violations)" supports an estimated 100% violation rate for waiting time penalties).

38. Here, even a single dollar of willfully unpaid minimum or overtime wages at any time during the relevant period would generate a waiting time penalty of 30 days' wages for the putative class members. As a result, courts have properly considered 100% of waiting time penalties at a 100% violation rate as part of the amount in controversy. *See Jauregui*, 28 F.4th at 993-94 (noting it was reasonable for employer to assume all terminated employees were entitled to maximum waiting time penalties based on at least one alleged violation occurring in the previous four years, even if a small percentage of employees might not be entitled to the maximum penalty); *Marquez v. Toll Glob. Forwarding (USA) Inc.*, 2018 WL 3046965, at *4 (C.D. Cal. June 19, 2018) (noting that "[r]ecovery of penalties under Cal. Labor Code § 203 does not hinge upon the number of violations committed" and finding that for purposes of assessing the amount in controversy, "all 112 terminated/resigned employees experienced *some* kind of violation . . . for which they were still owed wages at the time their employment ended" (emphasis added)).

39. Applying, conservatively, the state minimum wage hourly rate for 2022 of $15.00 per hour, and assuming that all class members worked shifts of eight hours, the total waiting time penalties at issue for just a subset of Plaintiff's waiting time penalties claim is at least **$5,220,000** ($15.00 per hour x 8 hours per day x 30 days x 1,450 former non-exempt employees = $5,220,000).

**3. The FAC Also Seeks Recovery Of Attorneys' Fees That Courts May Consider for Determining the Amount in Controversy.**

40. Plaintiff seeks to recover attorneys' fees under various provisions of the Labor Code. FAC ¶¶ 52, 76, 104, 112, 120; Prayer for Relief ¶¶ 8, 15, 27, 45,

50, 55, 58. Future attorneys' fees are properly included in determining the amount in controversy, including for class actions seeking fees under Labor Code Sections 218.5, 226, and 1194. *See Fritsch v. Swift Transportation Co. of Arizona, LLC,* 899 F.3d 785, 793–94 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."). Courts in the Ninth Circuit "have treated a potential 25% fee award as reasonable" in wage and hour class actions removed under CAFA. *See Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1138 (N.D. Cal. 2020).

41. Although Caliber denies Plaintiff's claim for attorneys' fees, inclusion of attorneys' fees for purposes of removal by calculating 25% of the amount in controversy in this case on a subset of Plaintiff's unpaid overtime claim, as detailed above, adds at minimum another $1,155,000 in controversy (25% of $4,620,000), bringing the total amount in controversy to at least **$10,995,000**.

42. This excludes the amount placed in controversy by Plaintiff's seven other causes of action.

43. Therefore, the inclusion of attorneys' fees as allowed by Ninth Circuit law further increases the amount in controversy above the minimum threshold for CAFA jurisdiction.

44. The preponderance of the evidence demonstrates that Plaintiff's alleged amount in controversy is above the minimum threshold of $5,000,000, as established by analyzing just two of Plaintiff's nine causes of action. Plaintiff's other seven causes of action, including for failure to provide meal breaks, failure to provide rest breaks, and inaccurate wage statements would increase the amount in controversy even further beyond the jurisdictional minimum of $5,000,000.

## IV. VENUE

45. This action was originally filed in Los Angeles County Superior Court. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a),

because it encompasses the county in which this action has been pending.

**V. <u>NOTICE</u>**

46. Caliber will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

**VI. <u>CONCLUSION</u>**

47. Based on the foregoing, Caliber respectfully requests that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Caliber respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated: July 31, 2026

MORGAN, LEWIS & BOCKIUS LLP

By *<u>/s/ Carrie A. Gonell</u>*
Carrie A. Gonell
Nancy Nguyen
Hailey A. Phelan
Attorneys for Defendant
CALIBER HOLDINGS LLC

# PROOF OF SERVICE

*Orlin Morales v. Caliber Holdings, LLC*

I am a resident of the State of California, employed in the County of Orange; I am over the age of eighteen years and not a party to the within action; my business address is 600 Anton Blvd., Suite 1800, Costa Mesa, California 92626.

On July 31, 2026, I served on the interested parties in this action the within document(s) entitled:

**DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT**

[ X ] **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Costa Mesa, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ X ] **BY EMAIL:** the parties listed below were served electronically with the document(s) listed above by e-mailed PDF files on July 31, 2026. The transmission was reported as complete and without error. My electronic notification address is 600 Anton Blvd., Suite 1800, Costa Mesa, CA 92626. My e-mail address is patricia.martin@morganlewis.com.

[ X ] **BY ELECTRONIC SERVICE:** by transmitting via **PACER** electronic transmission pdf document(s) listed above to the person(s) at the e-mail address(es) set forth below on July 31, 2026. The transmission was reported as complete and without error. My e-mail address is patricia.martin@morganlewis.com.

| | |
|---|---|
| **PROTECTION LAW GROUP, LLP**<br>Ryan Chuman, Esq.<br>Arnel O. Tan, Esq. / Christine V. Reyes, Esq.<br>149 Sheldon Street<br>El Segundo, CA 90245<br>Tel: 424.290.3095 / Fax: 866.264.7880 | *Attorneys for Plaintiff ORLIN MORALES*<br><br>Email:<br>ryanc@protectionlawgroup.com<br>arnel@protectionlawgroup.com<br>christine@protectionlawgroup.com |

[ X ] **STATE:** I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

[ X ] **FEDERAL:** I declare that I am employed in the office of a member of the Bar of this Court at whose direction this service was made.

Executed on July 31, 2026, at Costa Mesa, California.

Patricia Martin